# ELDER QUARFOT v. SECURITY NATIONAL BANK & TRUST COMPANY.[1]

July 14, 1933.

No. 29,486.

[1]Reported in 249 N. W. 668.

*Kelly, Berglund & Johnson,* for appellant. ·
*John Nitcher* and *Lucius A. Smith,* for respondent.

*WILSON, Chief Justice.*

Plaintiff appealed from a judgment entered notwithstanding a verdict for plaintiff.

Herman Heine was a farmer who lived for many years eight miles east of Faribault. His wife died in July, 1926. He then married Adeline Kitzman in July, 1929, and she survived him, he having died in July, 1931.

Elder Quarfot, the plaintiff, is a son of a sister of Mr. Heine's first wife and is about 36 years old. When nine years of age, in about the year 1905, he went to the Heine home and lived there for 15 years. He then married and thereupon rented the farm and operated it until about 1923. Since then he has lived in Minneapolis. Apparently Mr. Heine regarded him much as his own child.

In July, 1926, Mr. Heine owned two promissory notes, one for $3,000 executed by Emil Meese, and one for $1,700, since reduced to $1,125, executed by James Johnson. These notes were kept in a safe in an upstairs room. At the times now to be mentioned these notes carried an indorsement in Mr. Heine's handwriting: "Pay to Elder Quarfot, Herman Heine."

About three days before Mrs. Heine died Mr. Heine called Jennie Quarfot, plaintiff's stepmother and sister to the first Mrs. Heine, into the room where the safe was kept and said: "I want to tell you something that I did today." He then took these notes out of the safe and showed them to her, apparently including the indorsement. She said to him: "My sister told me about that, that it was her wish that they should be turned over to * * * Elder." He replied: "Well, I just called you upstairs here because I wanted you to know that it was Malinda's [Mrs. Heine] request and that I did so, and I want you to know it, and I want Elder to have those."

About three days after the funeral of his first wife Mr. Heine took plaintiff to the room wherein the safe was located. He then took from his safe these two notes so indorsed and handed them to plaintiff, who looked at them, figured up the amounts, saw the indorsement, and handed them back to Mr. Heine, who returned them to his safe and locked it. Over objection calling for the conclusion of the witness, and being in violation of the statute as to a conversation with a deceased person, this testimony by plaintiff was received:

Q. "Why did you turn the notes over to your uncle?"

A. "It was more convenient for him to take care of them than it was for me."

About a week later Mr. Heine gave plaintiff the combination to his safe. At that time he perhaps regarded plaintiff as the one nearest him. About a year later he gave him a second combination.

Soon after the death of Mr. Heine plaintiff told one of the witnesses that the notes had not been delivered to him. He may have meant that they had not been put in his possession, and we should not say that he committed himself to the proposition that there had not been a delivery in law.

This action was brought to recover possession of the notes, claiming that plaintiff was the owner thereof upon the theory that Mr. Heine had given them to him.

■ Plaintiff's answer quoted above, which he wishes construed as meaning that he, as the owner of the notes, left them with his uncle for safe-keeping, is not only a conclusion of the witness but is also an infringement of 2 Mason Minn. St. 1927, § 9817, in that it is concerning a conversation with a deceased person. The answer is a conclusion of the witness. The answer may not be construed as plaintiff urges without also implying the fact, otherwise absent, that the uncle accompanied the handing of the notes to witness with the necessary words to show a present intention then to pass title to plaintiff. Otherwise this testimony was without substance.

■ The court rejected as hearsay plaintiff's offer to prove that Mrs. Heine during her last illness and about four or five days before

her death, while seriously ill, told her sister, Jennie Quarfot, plaintiff's stepmother, that she had given plaintiff property which she had before she married Mr. Heine, and that this gift or transfer had been made by having Mr. Heine indorse and sign over certain notes. It was claimed that she at one time owned a claim in North Dakota. It occurs to us that this fact, if proved, had a direct bearing upon a plan to give these notes to plaintiff, a fact in relation to a matter of which she was apparently cognizant, and it came within one of the exceptions to the hearsay rule. Halvorsen v. Moon & Kerr Lbr. Co. 87 Minn. 18, 91 N. W. 28, 94 A. S. R. 669. We have never gone so far, however, as the court did in Shepard v. U. S. (C. C. A.) 62 F. (2d) 683. But the plan to be so proved was adequately shown by other evidence in the case. The error, which is a technical one, is without prejudice. There can be no doubt that Mr. Heine was considering giving these notes to plaintiff at some time, as indicated by the indorsement and as he disclosed to his wife's sister as hereinbefore stated. The problem is whether there was a delivery of the notes pursuant to the plan under consideration or otherwise.

■ Plaintiff must prove delivery. All we have is that Mr. Heine handed plaintiff the notes. He looked at them and handed them back to Mr. Heine, who returned them to the safe and locked it. Thereafter Mr. Heine collected six annual payments of interest on one of the notes and 12 semi-annual payments of interest on the other. In addition to that he collected and applied to the reduction of the principal of the $1,700 note payments as follows: July 18, 1927, $100; November 26, 1927, $50; January 12, 1929, $100; December 15, 1930, $175. In short, Mr. Heine kept dominion of the notes as long as he lived. He collected the interest and these payments on principal and used the money as his own.

Plaintiff did not ask for or receive any of the money so collected by Mr. Heine, nor did he ever ask Mr. Heine for the notes.

On August 9, 1926, Mr. Heine executed a will wherein he gave plaintiff $10,000. On May 27, 1930, he executed a will wherein he put all of his property in trust with the income to go to his then wife during her life, and he again gave plaintiff $10,000, but deferred payment until the death of his surviving wife.

A gift can only be established by clear and convincing evidence. 3 Dunnell, Minn. Dig. (2 ed.) § 4038; Hooper v. Vanstrum, 92 Minn. 406, 100 N. W. 229; Leach v. Leach, 162 Minn. 159, 202 N. W. 448. This includes every essential element for the consummation of the gift. Delivery is probably the principal essential. Ordinarily an actual manual delivery conquers. Much depends upon the intent of the donor. A mere unexecuted purpose resting only in the intent to make delivery at some time in the future is ineffectual. Gagne v. Hayes, 168 Minn. 413, 210 N. W. 147. Any substantial act on the part of the donor tending to carry the gift into effect and passing dominion over the property to the donee so that he can appropriate it to his own use will ordinarily support a gift. Murphy v. Bordwell, 83 Minn. 54, 85 N. W. 915, 52 L. R. A. 849, 85 A. S. R. 454. But in the instant case it is obvious that there was no passing of the dominion. That thought is strongly negatived. Indorsement of the notes is insufficient; in fact without delivery such indorsement rests in sterility.

Mr. Heine showed the notes to his wife's sister. He also showed them to plaintiff, who handed them back. There is no indication of an intent to pass title. Indeed the subsequent conduct of both parties negatives any such intent on the part of either of them. An actual or constructive delivery is necessary. To constitute a valid gift the donor must have an intention of transferring the property absolutely to the donee. 3 Dunnell, Minn. Dig. (2 ed.) § 4024.

We have here a unique situation. Mr. Heine owned and was in possession of the notes. He permitted plaintiff to have them in his hands. Had Mr. Heine intended to give these notes to plaintiff he ordinarily would have parted with the possession. The notes were present. There was really no circumstance making it necessary or really desirable for Mr. Heine to retain possession after the gift, if there had been one. Delivery is normally an element accompanying a change of title. As a rule a change of possession is desirable. The failure to change possession is a very strong circumstance tending to negative an intention of a delivery. The presence of manual delivery seldom leaves any room for doubts, but its absence is a badge of doubt. Possession is presumably rightful. These funda-

456

mentals are of the highest importance when it is claimed that a gift was made by a person subsequently deceased. It is easier to fabricate a story than to get possession of another's property.

It has long been the law that where the efficacy of the delivery in a case of this character is dubious, the donative intent not clear, and the donor resumes the possession, there is no gift. Bunn v. Markham, 7 Taunt. 224; Ward v. Turner, 2 Ves. Sr. 430. Plaintiff's evidence does not bring the case within the operation of M'Andrew v. Mulroy [1924] 1 I. R. 98. Apparently Mr. Heine showed to plaintiff the notes so indorsed for the purpose of advising him as to the property which he intended to give him at some time, but the intent was never executed.

Affirmed.

